JAMES COMMON

V.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Bastardy—Evidence—Immaterial Error.*

1. In a prosecution for bastardy, where the evidence was conflicting, it is *held:* That the verdict was sufficiently supported by the evidence.

2. Evidence to show that the prosecuting witness testified differently upon a former trial is competent in such cases, but where it appears that the exclusion of such testimony probably did the defendant no harm, the discrepancy attempted to be shown being immaterial, the court may refuse to reverse the judgment.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Iroquois County; the Hon. ALFRED SAMPLE, Judge, presiding.

Mr. C. W. RAYMOND, for appellant.

Mr. A. F. GOODYEAR, State's Attorney, for appellees.

C. B. SMITH, P. J. This was a prosecution for bastardy on complaint of Carrie Winkle. On the trial below the defendant was convicted and he now appeals to this court and seeks

a reversal of the judgment. The case was here before us at a former term on the appeal of appellant, and is reported in Common v. The People ex rel., etc., 28 Ill. App. 230. It was then reversed because a majority of this court was of opinion the court erred in refusing to continue the case on motion of appellant. The case was remanded and retried again, resulting in appellant's conviction. The case has now been tried three times before three juries, once in the County Court and twice in the Circuit Court, all resulting alike in the conviction of the defendant. Two grounds only are urged for a reversal of this judgment:

*First.* That the verdict is contrary to the evidence.

*Second.* That the court erred in refusing the defendant the right to call witnesses to show the prosecutrix had sworn differently upon a former trial from what she testified to in this trial.

With reference to the first objection it is apparent, from a careful reading of the testimony, that there is an irreconcilable conflict in it. The prosecutrix testifies positively that the child was begotten at the house of one Brumback, where both she and the defendant were, and had been working for some time together as hired servants, on the 31st day of May, 1886, and that the defendant, on the early morning of that day came to her room and had sexual intercourse with her, and that from such intercourse she became pregnant. She also testified that her child was born on the 27th day of February, 1887, and that the defendant was its father. The defendant as positively denies that he has ever had sexual intercourse with the prosecutrix, and denied that he was the father of her child. Other testimony was offered on both sides tending to support the parties for whom the witness was called. We have carefully read the evidence and are satisfied the jury was justified in finding the defendant guilty, if they believe the plaintiff and her witnesses. There is ample evidence in this record to sustain the judgment if the witnesses for the prosecution were believed by the jury. Either the prosecuting witness, Carrie Winkle, or the defendant, James Common, testified deliberately, wilfully and falsely regard-

ing the paternity of the child. There is no possibility of a mistake upon that question. The jury heard and saw them both, and they were much better able to determine than we are whether "an artful and designing woman" was trying to over-reach and convict an innocent, guileless man, or whether an innocent, unlettered country girl was the victim of the lust and lechery of the defendant, and despoiled of her virtue and character. The defendant has sworn three times that he had no sexual intercourse with Carrie Winkle. Three juries have heard him and his witnesses, and they have refused to believe him, and these three juries have heard Carrie Winkle tell the simple, short story of her seduction and ruin by this defendant, and they have all believed her. It is urged with great earnestness and zeal upon us, that the unsupported oath of a "designing woman" is not sufficient to justify con-viction of a man for bastardy in cases where he denies it. Whether this is so must always be a question of fact for the jury and not a question of law for the court. Acts of seduc-tion are generally accomplished in secret and under cover of night, and it is absurd to say that no woman could convict a man of bastardy who could not call some witness to support her, and that upon her failure to do so the denial of her seduction would necessarily require his acquittal.

As to the second objection urged we are of opinion that the evidence offered by appellant and refused by the court was admissible under the authority of McCoy v. The People, 71 Ill. 111. On the first trial in the County Court the prosecutrix had testified that she had been up about half an hour before the defendant came to her room, and on the present trial she testified that she had been up about an hour and a half before the defendant came to her room on the morning when she claims the sexual act occurred. The defendant offered to call witnesses to prove what her testi-mony on that point was on the first trial, but the court rejected the testimony. Even if this evidence had been allowed, the contradiction would have been of so unimportant a character, and upon a point so immaterial, that it is hardly possible that it would have changed the verdict. She did not

on either occasion pretend to be able to fix the exact hour defendant came to her room, or the exact length of time she had been up before he came to her room, nor was the exact time at all material. The material question was whether the defendant was there at all, and not as to the precise hour. So that even if it was error to refuse the evidence offered, it was such an error as could do the defendant no harm. Complaint is also made in the reply brief and argument of appellant that the court erred in refusing to give the last five instructions asked by appellant. The court gave for the defendant fifteen elaborate instructions covering every phase of the law applicable to the defendant's theory of the case, or which could be fairly asked by him. Those refused were either duplications of what had been given or were clearly wrong, and all were properly refused. The judgment is affirmed.

*Judgment affirmed.*