## AUGUST H. SCHARF
### v.
## THE PEOPLE OF THE STATE OF ILLINOIS.

*Bastardy—Release—Evidence—Instructions.*

1. In a bastardy proceeding, this court declines, in view of the evidence, to interfere with the verdict for the plaintiff.
2. Evidence as to acts of impropriety on the part of the prosecuting witness, with parties other than the defendant, at times outside the period of gestation, should not be admitted.

[Opinion filed February 4, 1890.]

APPEAL from the Circuit Court of Bond County; the Hon. AMOS WATTS, Judge, presiding.

Messrs. LANE & COOPER, for appellant.

Messrs. VAN HOOREBEKE & NORTHCOTT, for appellee.

GREEN, J. Appellant was charged with being the father of the bastard child of Florence Whitmore, an unmarried woman. The case was tried by a jury in the County Court, and again on appeal in the Circuit Court with the same result, a verdict against the defendant and judgment for $50 and costs. To reverse the judgment of the Circuit Court this appeal was taken. The prosecution was commenced in July, 1886, the child was born September 20, 1886, and died January 6, 1887.

There is no dispute as to the facts that the prosecutrix was an unmarried woman, that the child was a bastard, and that Florence Whitmore was the mother of it. But on behalf of appellant it is urged the verdict is not supported by the evidence; that the trial court erred in admitting incompetent and irrelevant evidence for the people, in refusing to admit competent and relevant evidence for the defendant, in giving

Scharf v. The People.

improper instructions for the people, in refusing and improperly modifying proper instructions for defendant, and in entering judgment for too large a sum against defendants. We have not contented ourselves with an examination of the abstract above, but have carefully examined the evidence in the record, and from it reach the same conclusion two juries arrived at.

We apprehend there can be no doubt that the plaintiff, holding the affirmative of an issue, must prove it by a preponderance of the evidence, and the citation of the several cases by appellant in support of such contention was quite superfluous. And that the weight of the evidence is to be determined by the jury is also true. But if the court of review is satisfied from the evidence in the record that the jury has improvidently used this power, disregarded the evidence, and, influenced by sympathy or prejudice, rendered an unjust verdict, it will set such verdict aside. This was done in the cases cited by appellant, because the court of review was satisfied in each case that the verdict of the jury was wrong and unsupported by the evidence. In this case, however, we are satisfied the verdict is right, and is warranted by the evidence, and although the evidence was conflicting upon material matters, and witnesses testified on one side directly contradicting the testimony given by witnesses on the other side, the jury were better able to determine which witnesses were entitled to credit, and the weight which ought to be given to their testimony, than this court can be. The jury saw and heard the witnesses testify, observed their manner while testifying, their apparent intelligence and candor, and were thus furnished with better means to form an accurate judgment than we have in the evidence written out in the record.

In Connelly v. People, 81 Ill. 379, it is said: " The rule is well established that when the jury has been properly instructed, and when the testimony is contradictory and irreconcilable, a new trial will not be awarded by this court."

On both propositions, whether defendant was the father of the bastard child and whether she signed the release offered in evidence, the testimony is flatly contradictory. We can

not say which is the better, or what testimony the jury should credit, nor on which side was the weight of evidence; that was the peculiar province of the jury, and that duty they have performed, we must presume, with fidelity; opportunity was afforded them, by the presence of parties and witnesses, to judge more certainly of the weight of the evidence than we can possibly have by reading the testimony. Holcomb v. People, 79 Ill. 409; McFarland v. People, 72 Ill. 368; McCoy v. People, 71 Ill. 111; Cook v. People, 51 Ill. 143; Allison v. People, 45 Ill. 37, and many other cases, approve the rule announced in Connelly v. People, *supra*.

The evidence claimed to have been erroneously admitted on behalf of appellee, consisted of two letters alleged to have been written by defendant to the prosecutrix, and a leaf out of a hotel register. This evidence was, as we view it, relevant as tending to corroborate her testimony touching the intimate relations existing between her and defendant, and contradicting him as to that matter, and also tending to corroborate her testimony about meeting and staying all night at St. Louis with him, pursuant to an arrangement made between them to meet there and get married. This evidence was also competent. The proper foundation was laid for its introduction. She testified the letters were in his handwriting; that she had seen him write frequently and knew his handwriting.

No objection was made to her refreshing her recollection as to the name of the hotel in St. Louis by looking at the leaf. After looking at it she gave the name of the hotel and testified that defendant told her there he had registered as A. Shafer and wife, Sedalia, and they occupied the same room there; that she had afterward gone to the same hotel, saw this leaf in the register there, identified the entry thereon of A. Shafer and wife as made in the handwriting of defendant, and on the same day the same leaf, detached from the book, was handed to her by her attorney in St Louis.

It is insisted also the court erred in refusing to permit witnesses Mrs. Little and Mrs. Slevins to testify to seeing one Wright in the act of sexual intercourse with prosecutrix in March, 1886, and refusing to permit deposition of Bill Walts

to be read, as to improper conduct of Wright and prosecutrix in June, 1886.    This evidence was incompetent; it related to conduct between these parties not within the period of gestation, and if admitted, would shed no light upon the question whether or not defendant was the father of the child.    Holcomb v. People, *supra.*    The testimony of Brown, as to the conduct of the prosecutrix in June or July, 1885, was properly refused for the same reason, and the case of Robnett v. People, 16 Ill. App. 303, is not in point.

In that case the acts and conduct of the prosecutrix sought to be shown, occurred during the period she claimed to have become pregnant, and the claim that Brown's testimony was competent to impeach the prosecutrix is not tenable as no foundation was laid to introduce it for that purpose.    It is said also it was error to refuse to admit the testimony of Mrs. Little and Mrs. Slevins as to the contents of two letters; neither of them claimed to know whose handwriting these letters were in, or that they recollected the contents of them; the evidence was incompetent.    The pretended release claimed by appellant to be a complete bar to the suit, when taken in connection with the testimony of the prosecutrix touching the circumstances under which she signed the paper, if the jury believed her, never became operative as a release, and was in fact but a direction to her attorney to dismiss this proceeding and a suit against defendant for damages, and was to be carried out on condition only defendant should marry her.

The complaint as to instructions is confined to the giving of the second instruction on the part of the people, and modifying defendant's sixth instruction.    Taking said second instruction as a whole it is not objectionable, and the modification of defendant's sixth instruction was not such an error as to require the reversal of the judgment.    We think the jury were fully and fairly instructed as to the law, and quite as favorably for defendant as he had the right to require.    The newly discovered evidence set up as a ground for a new trial, was, in our judgment, cumulative merely, and not conclusive, and afforded no sufficient reason for setting aside the verdict.    It is lastly insisted the judgment is excessive ; that the child having lived

404 APPELLATE COURTS OF ILLINOIS.

VOL. 34.]    Mallinckrodt Chem. Works v. Belleville Glass Co.

but three months and seventeen days, the judgment should have been at the rate of $8.25 per month and ought not to have been for more than $29.

The statute provides, if the issue is found against defendant, " he shall be condemned by the order and judgment of the court to pay a sum of money not exceeding one hundred dollars for the first year after the birth of the child, and a sum not exceeding fifty dollars yearly for nine years succeeding said first year, for the support, maintenance and education of such child."

As we understand the reason for fixing the maximum sum for the first year at double the amount of such sum for each succeeding year for nine years, it is, that the expense attending childbirth, the inability of the mother to labor for some time after, and earn means for the maintenance and support of the child are taken into consideration, and are supposed to require a larger sum to be appropriated for that year; and if, as has been decided by our Supreme Court, the proceedings do not abate by reason of the death of the child, then, adopting the construction contended for by appellant, if a bastard should be gotten, be born alive, but die within a week after birth, the father would, on conviction, be liable to pay but $1.48, and the mother bear the burden of paying the expense attending childbirth, and the support and maintenance of the child, and receive that meager sum only. This was not the intent of the act as we construe it, and the sum of $50 was not excessive. The judgment is affirmed.

*Judgment affirmed.*