## Charles R. Baird v. People of the State of Illinois ex rel. Lizzie Wenderlandt.

1.  MARRIAGE — *What Necessary to Constitute at Common Law.*— Where a common law marriage was alleged as the defense in a bastardy case, *it was held* that the following instruction gave correctly all the law necessary for the jury to know :   The court instructs the jury that if they believe from the evidence that   *   *   *   entered into a marriage contract by and between themselves in good faith, and accepted each other as husband and wife, they should return a verdict of not guilty. The contract must have been made before the intercourse when the child was conceived, and both parties must have understood the agreement was in place of a marriage ceremony.   If the prosecuting witness did not understand the agreement to be all that was necessary to constitute a valid marriage, then there was no valid marriage.   There was no valid marriage unless both parties acted in good faith, and each intended thereby to become husband and wife.

2.  PRACTICE—*In Bastardy Cases.*—In a bastardy case, where the assignment of errors complained of the refusal of the court below to quash the affidavit of information, warrant and transcript, *it was held* that the law only required the justice to return the warrant and bond to the Criminal Court, and the abstract showing neither of them, the refusal of the court to grant the motion could not be held to be error.

**Bastardy.**—Appeal from the Criminal Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding.   Heard in this court at the October term, 1896.   Affirmed.   Opinion filed November 30, 1896.

Sawin & Clark, attorneys for appellant.

William F. Struckman, attorney for appellee.

Mr. Justice Gary delivered the opinion of the Court.

The appellant is the father of a child born of the relator, March 17, 1896. The only question made in the case is, whether he and she are married. There is not much difference in their statements as witnesses, that she yielded to his importunities, upon words between them, quite capable of being construed as words of a present marriage contract between them, in his bedroom, on the fourth night spent by them together there, followed at once by consummation.

But the verdict of the jury that he is the father of her bastard child, contradicts such construction.

It is quite possible that she understood that she was only betrothed—not married—to him; a relation which Charles Reade in "Cloister and Hearth," did not deem himself violating probabilities, when he depicts the father and mother of the great Erasmus as excusing, if not justifying, their conduct by it.

That the appellant did not regard himself as married to her, is shown by his statement, not contradicted, to her sister, that the relator should kill the child before he would marry her.

The first error assigned is, that the court erred in refusing to quash the affidavit of information, warrant and transcript. Only the warrant and bond are required to be returned by the justice to the Criminal Court. Curran v. People, 35 Ill. App. 275.

The abstract shows neither of them. The abstract states the instructions given by the court of its own volition, as follows:

"1.    Immaterial whether the prosecuting witness is or is not now willing to marry defendant.

2.    The court further instructs the jury that if they believe from the evidence that Lizzie Wenderlandt and Charles R. Baird entered into a marriage contract by and

Littlestone v. Goldenberg.

between themselves, and in good faith accepted each other as husband and wife, they shall return a verdict of not guilty. Contract must have been made before intercourse when child was conceived, and both parties must have understood agreement was in place of a marriage ceremony. If prosecuting witness did not understand the agreement to be all that was necessary to constitute valid marriage, then there was no valid marriage.

No valid marriage unless both parties acted in good faith, and each intended thereby to become husband and wife."

We will not enter upon the learning of "*per verba de presenti*," "*per verba de futuro*," and " *com compulo* " (which last strikes us as being from an uncommonly dead language), as contained in the instructions asked by the appellant. The court gave correctly all the law necessary for the jury to learn.

Whether the facts existed under which a marriage was the result, was a question for the jury.

The judgment is affirmed.